UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
+++++++++++++++++++++++++++++++++++++++++++++++++++++

**Constitution Pipeline Co., LLC,**

**Plaintiff,**

**-v-**                                                    **3:14-CV-2045 (NAM/RFT)**

**A Permanent Easement for 0.24 Acres and Temporary
Easement for 0.22 Acres in Davenport, Delaware
County, New York, Tax Parcel, Number 34.-1-48;
Thomas C. Earle,**

**Defendant.**

+++++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:

Saul Ewing LLP
Elizabeth U. Witmer, Esq., of counsel
1200 Liberty Ridge Drive, Suite 200
Wayne, Pennsylvania 19087-5569
and
John P. Stockli , Jr.
Stockli, Slevin and Peters, LLP
1826 Western Avenue
Albany, New York 12203
and
Saul Ewing LLP
Sean T. O'Neill, Esq., of counsel
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
and
Hiscock & Barclay LLP14-2018
Yvonne E. Hennessey, Esq., of counsel
80 State Street
Albany, New York 12207
Attorneys for Plaintiff

Thomas C. Earle
727 Farmers Avenue
Bellimore, NY 11710
Defendant, *Pro Se*

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On December 2, 2014, the Federal Energy Regulatory Commission ("FERC") issued an Order which, *inter alia*, authorized plaintiff Constitution Pipeline Co., LLC ("Constitution") to construct and operate approximately 124 miles of new 30-inch diameter natural gas pipeline ("the Project").  The FERC Order granted to Constitution a certificate of public convenience and necessity ("FERC certificate") under the Natural Gas Act ("NGA"), 15 U.S.C. § 717f.  The NGA grants private natural gas companies the federal power of eminent domain where they hold a FERC certificate and either cannot acquire property by contract, or are unable to agree with the owner of the property on the amount of compensation to be paid for a necessary right of way for the transportation of gas.  *Id.* at § 717f(h).[1]  District court has jurisdiction in such cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.  Thus, "[o]nce a [certificate of public convenience and necessity] is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking."  *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed.Appx. 495, 498 (1st Cir. 2005); *Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements*, 777 F.Supp.2d 475, 479 (W.D.N.Y. 2011), *aff'd* 552 Fed.Appx.

---

[1] 15 U.S.C. § 717f(h) provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.... [T]he United States district courts shall only have jurisdiction of the cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

37 (2d Cir. 2014).

Relying on its FERC Order, Constitution commenced the instant action under section 71.1 of the Federal Rules of Civil Procedure against defendant, the owner of the subject property, to take the rights of way on the property necessary to install and construct pipeline facilities as part of the Project. The complaint (Dkt. No. 1) seeks an order and judgment holding that Constitution has the substantive right to condemn the rights of way, fixing the compensation to be paid to defendant for the rights of way, and granting title to the rights of way to Constitution. The complaint avers that the FERC Order covers rights of way described in the complaint and that, although Constitution has offered at least $3,000 for the rights of way, it has been unable to acquire the rights of way by agreement with the landowners.

Currently before the Court are the following motions:

- Constitution's Motion for Partial Summary Judgment (Dkt. No. 4) seeking partial summary judgment holding that Constitution has the substantive right to condemn a permanent right of way and easement and temporary easements as described in Exhibit A to the complaint; and

- Constitution's Omnibus Motion for Preliminary Injunction (Dkt. No. 5) seeking access to, possession of, and entry to the rights of way upon the filing of a bond

Defendant submits a *pro se* answer (Dkt. No. 11) and opposition to the motions (Dkt. No. 13). Where, as here, the nonmovant is proceeding *pro se*, the Court reads his papers liberally and interprets them "to raise the strongest arguments that they suggest." *See Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and quotation marks omitted).

Defendant challenges the FERC determination of public necessity for the pipeline. He also raises questions regarding the safety of the pipeline. Further, he argues that the pipeline

-3-

should be in a different location on his property.  These are not matters for the Court's

consideration.  The public necessity for and the safety and location of the Project are matters that

have been determined by FERC in issuing the certificate.   This Court has no authority to review

such matters; judicial review of the FERC certificate itself is only available in the circuit court.

*See* 15 U.S.C. § 717r(b); *Millennium Pipeline*, 777 F.Supp.2d at 479; *Kansas Pipeline Co. v. A*

*200 Foot By 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1256 (D.Kan. 2002) ("The district

court lacks jurisdiction to review the validity and/or conditions of a FERC certificate.").

Defendant's submission may also be read to assert that the FERC Order is invalid because certain

conditions have not been met; again, this is not a question for determination by this Court.  As

explained by the Tenth Circuit:

> [A] collateral challenge to the FERC order [granting certificate of public
> convenience and necessity under15 U.S.C. § 717f] could not be entertained
> by the federal district court. We agree with the appellants that the eminent
> domain authority granted the district courts under § 7(h) of the NGA, 15
> U.S.C. § 717f(h), does not provide challengers with an additional forum to
> attack the substance and validity of a FERC order. The district court's
> function under the statute is not appellate but, rather, to provide for
> enforcement.

*Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989); *accord*

*Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 974 (N.D.Ill. 2002) ("The

jurisdiction of [district] court is limited to evaluating the scope of the FERC Certificate and

ordering condemnation as authorized by that certificate").  It is not for this Court to decide

whether the FERC Order was properly issued.

Defendant further argues that the FERC Order is "conditioned" upon

Constitution's receipt of various authorizations and permits, including a certification pursuant to

section 401(a)(1) of the Clean Water Act ("CWA"), 33 U.S.C. § 1341(a)(1).  This argument is

defeated by a plain reading of the FERC Order in light of relevant case law.  Defendant relies on

Ordering Paragraph E, which states in part: "The certificate authority issued [herein] ... shall be

conditioned on the following: ... (3) Applicants' compliance with the environmental conditions

listed in the appendix to this order."  The Appendix to which Ordering Paragraph E(3) refers

includes the following: "8. Prior to receiving written authorization from the Director of OEP

[Officer of Energy Projects] to commence construction of their respective project facilities, the

Applicants shall file documentation that they have received all applicable authorizations required

under federal law (or evidence of waiver thereof)."  Defendant argues that "all applicable

authorizations required under federal law" includes the CWA 401 certificate and other

authorizations.  In finding that these provisions do not, as defendant argues, create a "condition

precedent" such that Constitution cannot commence condemnation proceedings until it has

obtained the CWA 401 certificate and other authorizations, the Court observes first that paragraph

8 of the Appendix requires applicants to show that they have received "all applicable

authorizations" prior to receiving OEP authorization to commence construction –  not prior to

initiating eminent domain proceedings.  Further, Ordering Paragraph E also provides that the

FERC certificate authority "shall be conditioned" on "(1) Applicants' completion of the

authorized construction of the proposed facilities and making them available for service within 24

months from the date of this order[.]"  Certainly, the completion of construction of the facilities

cannot be a condition precedent to Constitution's exercise of eminent domain.  In addition,

paragraph 6 of the Appendix requires Constitution to "file updated status reports with the

Secretary on a weekly basis until all construction and restoration activities are complete. ... Status

reports shall include: (a.) an update on the Applicant's efforts to obtain the necessary federal

authorizations[.]"  The requirement of weekly updates on Constitution's efforts to obtain federal authorizations clearly presupposes that they have not all been obtained prior to the exercise of eminent domain.  As Constitution points out in its memorandum of law, because many of the environmental conditions in the Appendix can only be satisfied if Constitution has possession of the rights of way, and because some conditions cannot be completed until construction is complete and the Project is placed in service, "if Constitution were not allowed to exercise eminent domain authority until it had satisfied all conditions in the FERC Order, the Project could never be constructed."  The Court agrees; the FERC Order cannot reasonably be read to prohibit Constitution from exercising eminent domain authority until it has complied with all conditions set forth in the Appendix.  *Compare Mid-Atlantic Express, LLC v. Baltimore County, Md.*, 410 Fed.Appx. 653, 657 (4th Cir. 2011) (holding that district court lacked jurisdiction to enter a preliminary injunction awarding immediate possession where FERC Order contained significant restrictions, including: "Mid-Atlantic *shall not exercise eminent domain authority* ... to acquire permanent rights-of-way ... *until* the required site specific residential construction plans have been reviewed and approved in writing by the Director of [OEP]." (emphasis added)).  In contrast to the order in *Mid-Atlantic Express*, the conditions in the FERC Order in the instant case do not expressly restrict Constitution's right to exercise eminent domain, and they do not prevent this Court from granting the relief requested by Constitution.  *See, e.g., Columbia Gas Transmission, LLC v. 370.393 Acres*, 2014 WL 5092880, *4 (D.Md. Oct. 9, 2014) ("A district court's role in proceedings involving FERC Orders is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the court." (citing *Millennium Pipeline*, 777 F.Supp.2d at 281)); *Portland Natural Gas*

*Transmission Sys. v. 4.83 Acres of Land*, 26 F. Supp. 2d 332, 336 (D.N.H. 1998) ("Compliance with FERC conditions cannot be used as a defense to the right of eminent domain and cannot be cited to divest the court of the authority to grant immediate entry and possession to the holder of a FERC certificate.").   The Court rejects the argument that Constitution must wait until it has obtained a CWA 401 certificate and other authorizations before it can initiate eminent domain proceedings.

Defendant also disputes Constitution's valuation of the taking.  The amount of compensation to which defendant is entitled will be addressed in the compensation phase of this proceeding, and defendant will be given notice and opportunity to be heard on the question. Defendant's disagreement with Constitution's appraisal and the amounts it has offered does not prevent this Court from granting partial summary judgment.

In addition, defendant notes that Constitution has changed its offer of settlement "from several thousand dollars to the now $900.00."  He adds: "Neither offer has been realistic and they both seem to be designed to acquire a quick signature from me on an agreement for an eminent domain taking."  Therefore, defendant argues, Constitution has not negotiated in good faith.  The Second Circuit has not yet determined whether a condemnor must show that it negotiated in good faith before obtaining property by eminent domain under § 717f(h).  *See Millennium Pipeline*, 552 Fed.Appx. at 39.  In the case at bar, based on the affidavit of Patrick McCluskey (Dkt. No. 4-4) and defendant's own submissions, it is clear that Constitution made at least two offers and that at least one of the offers was based on an appraisal, a copy of which was provided to defendant. McCluskey states that the written offer exceeded the appraised value.  Defendant also states that plaintiff's counsel wrote to him that if he did not accept its offer, Constitution would begin

condemnation proceedings.  This letter is not evidence of bad faith; indeed, having made an offer

based on an appraisal and having been unable to reach agreement with the landowner,

Constitution was entitled to begin condemnation proceedings.  Defendant's allegations do not

support a finding that Constitution did not proceed in good faith.  Assuming that the NGA

requires a good faith negotiation, Constitution's conduct meets this standard.  Affording this *pro*

*se* defendant all the solicitude to which he is entitled, the Court has reviewed his arguments and

finds that they do not bar partial summary judgment.

      Plaintiff has demonstrated that it meets the requirements of 15 U.S.C. § 717f(h): it has a

certificate of public convenience and necessity issued by FERC; it has not been able to acquire

the needed land by contract or agreement with the owner; and the owner has rejected an offer of

at least $3,000.  Thus, it is authorized to exercise the federal power of eminent domain.  *See*

*Millennium Pipeline*, 777 F.Supp.2d at 479.  On this record, reading defendant's papers most

liberally and resolving all ambiguities and drawing all factual inferences in his favor, the Court

finds no genuine issue with regard to any material fact and no legal obstacle to partial summary

judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Treistman*, 470 F.3d at 474.

Plaintiff is entitled to partial summary judgment holding that, pursuant to the NGA and the FERC

Order, Constitution has the substantive right to condemn a permanent right of way and easement

and temporary easements as described in Exhibit A to the complaint.

      Regarding plaintiff's motion for a preliminary injunction, "once a district court determines

that a gas company has the substantive right to condemn property under the NGA, the court may

exercise equitable power to grant the remedy of immediate possession through the issuance of a

preliminary injunction."  *East Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004).

-8-

The standard for a preliminary injunction is as follows:

> In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiffs favor; and (3) that the public's interest weighs in favor of granting an injunction.  A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.

*Singas Famous Pizza Brands Corp. v. New York Advertising LLC*, 468 Fed.Appx. 43, 45 (2d Cir. 2012) (citations and quotation marks omitted).[2]  With respect to the second element, the Court has already determined that Constitution has succeeded on the merits.[3]

With respect to the first condition – irreparable harm absent injunctive relief – Constitution points to the provision in the FERC Order requiring Constitution to complete construction of the project and make the new pipeline facilities available for service within twenty four months of the date of the FERC Order, or by December 2, 2016.  The affidavit of Matthew Swift, Constitution's Project Manager, states that if Constitution does not have possession of the rights of way on or about February 16, 2015 for surveys and construction, "there is a likely risk that Constitution will not be able to begin construction in time to allow the Project to be completed by the anticipated in service date of December 2, 2016, which will cause

---

[2] Even if the injunction sought is viewed as a mandatory injunction, which should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief," *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), the Court finds that Constitution has met this standard for the reasons set forth herein.

[3] As the Third Circuit observed in *Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 315 (3d Cir. 2014):
> This is not a "normal" preliminary injunction, where the merits await another day. In those situations, the probability of success is not a certainty such that weighing the other factors is paramount. Here, there is no remaining merits issue; we have ruled that Columbia has the right to the easements by eminent domain.

Constitution to fail to comply with the conditions of the FERC Order and to suffer substantial

damages." Swift explains:

> 6. The pipeline is approximately 124 miles long, and in order to expedite construction, Constitution has divided the pipeline into 5 construction spreads, each of which will have twelve crews to perform all construction tasks....
>
> 7. The construction of large-diameter natural gas pipelines is accomplished in linear segments, with a number of different crews performing different functions as part of the overall pipeline spread. Each crew follows the one ahead of it from one end of a construction spread to the other. The crews (and equipment) proceed sequentially in an assembly-like fashion along the construction corridor at a rate (distance per day) that depends on topography, road and stream crossings, and other factors. In addition, there will be specialty crews that typically do not work sequentially with the other crews. The specialty crews perform tasks such as road borings, stream installations, and trenchless crossings of environmentally sensitive areas.
>
> 8. Pipeline construction begins with tree and vegetation clearing, and installation of environmental controls, followed by grading and trenching. Thereafter, stringing, pipe bending, welding, and coating of the pipe takes place, followed by installation, backfilling, remediation, and restoration. The newly constructed pipeline will then be pressure-tested prior to being placed in service.
>
> 9. Generally once construction starts, the crews will move sequentially through all of the tasks for each pipeline segment until construction is complete.
>
> 10. Construction of the Project is also subject to significant restrictions intended to protect the environment and minimize the impact of construction on the environment. These restrictions are time sensitive and interdependent.

The Swift affidavit goes on to explain in substantial detail the construction schedule, the FERC

requirements prior to construction, and other restrictions on construction, as well as potential

monetary losses. Constitution has demonstrated it will sustain immediate and irreparable harm in

the absence of the injunction.

In alleging harm, defendant primarily argues that the taking will cause monetary loss in

excess of the sums offered by plaintiff. This will be addressed in the compensation phase of the

action. Defendant also expresses concern about the safety of the pipeline; as noted, this is a

matter for FERC, not this Court.  Any potential losses to defendant arise from the NGA and the FERC Order, and will occur regardless of whether the Court grants a preliminary injunction to Constitution.  Plaintiff has demonstrated harm in the absence of a preliminary injunction that outweighs the harms defendant may sustain if the preliminary injunction is granted.

Regarding the public interest, Swift explains in his affidavit that the project "will provide additional natural gas capacity to meet the increased needs of customers in the New York and New England market areas" and "will provide new natural gas service for areas currently without access to natural gas, expand access to multiple sources of natural gas supply, improve operational performance, system flexibility and reliability in the New York and New England market areas and optimize the existing systems for the benefit of both current and new customers."  FERC has issued to Constitution a certificate of public convenience and necessity, and has determined that "benefits the Constitution Pipeline Project ... will provide to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and on landowners and surrounding communities."  The Court finds that the public's interest weighs in favor of granting a preliminary injunction.

The Court has carefully considered all of defendant's arguments with the solicitude to which his *pro se* status entitles him.  Weighing all of the relevant factors, the Court holds that Constitution is entitled to a preliminary injunction granting access to, possession of, and entry to the rights of way upon the filing of a bond.  In setting the amount of the bond, the Court accepts $900 as the appraised value of the subject property, as set forth in Exhibit A to the declaration of Elizabeth U. Witmer, Esq. (Dkt. No. 5-1).  Accordingly, the Omnibus Motion for Preliminary Injunction (Dkt. No. 5) is granted upon the filing of a bond in the sum of $3,600.

-11-

It is therefore

ORDERED that plaintiff's Motion for Partial Summary Judgment (Dkt. No. 4) is granted, and the Court will sign the submitted Order; and it is further

ORDERED that plaintiff's Omnibus Motion for Preliminary Injunction (Dkt. No. 5) is granted upon the filing of a bond in the sum of $3,600, and the Court will sign the submitted Order.

IT IS SO ORDERED.

Date:   February 25, 2015

Norman A. Mordue
Senior U.S. District Judge

-12-